| | |
|---|---|
| THOMAS E. ALLEN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CITY OF DUNN, a political subdivision of )<br>the State of North Carolina; TRAE )<br>GONZALEZ, individually and in his official )<br>capacity as a law enforcement officer with )<br>the City of Dunn Police Department; and )<br>APPELLES HART, individually and in his )<br>official capacity as a law enforcement officer )<br>with the City of Dunn Police Department, )<br>)<br>Defendants. ) | ORDER |

This matter is before the court upon defendants' motion for summary judgment (DE 32). The motion has been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, defendants' motion is granted.

## STATEMENT OF THE CASE

Plaintiff began this civil rights tort suit by filing a complaint in Harnett County Superior Court February 18, 2022. Defendants removed the action to this court March 25, 2022.

Plaintiff asserts claims for common law assault, battery, false imprisonment and excessive force against defendants Trae Gonzalez ("Gonzalez") and Appelles Hart ("Hart"), police officers with defendant City of Dunn ("Dunn"); common law malicious prosecution against defendant Hart; negligent hiring, training, and supervision against defendant Dunn; and excessive force, false

imprisonment, and malicious prosecution under 42 U.S.C. § 1983 against defendants Gonzalez and Hart. (See Notice of Removal (DE 1) Ex. 1 (DE 1-1) ("Compl.") ¶¶ 64–135)). Plaintiff asserts all claims against Gonzalez and Hart in their individual and official capacities.

Defendants filed the instant motion June 5, 2023, relying upon (1) defendants' affidavits; (2) affidavits of witnesses and third parties; (3) a North Carolina state magistrate's probable cause order; (4) plaintiff's arrest documents; (5) a video recording of the incident at issue taken by a bystander (the "video recording"); and (6) defendant Gonzales's body camera footage (the "audio recording"). In opposition, plaintiff relies upon two expert reports, and defendant Hart's official report of the incident.

## STATEMENT OF FACTS

On March 16, 2021, CSX Railroad personnel arrived in Dunn, North Carolina unannounced, and shut down all rail crossings through the town for maintenance, except for one crossing on Granville Street. (Defs' Statement of Material Facts (DE 33) ("Defs' SMF") ¶ 14).[1] As a result, traffic in Dunn came to a "virtual shutdown" and all vehicles were funneled to the Granville Street crossing. (Id.). The increase in traffic volume, and diversion of large trucks to the residential area around Granville Street, required the Dunn police department to station officers throughout town to assist with traffic direction and control. (Id. ¶ 15).

Defendants Hart and Gonzales (together, the "officers") were assigned to traffic duty that day at the intersection of North Ellis Avenue and West Granville Street (the "intersection") in Dunn. (Id. ¶ 16). Traffic that day was a "very busy" "log-jam[.]" (Id. ¶ 18). That afternoon, plaintiff drove from Dunn to Greenville for a medical procedure, returned to Dunn, and approached

---

[1] Pursuant to Local Rule 56.1(a)(2), the court cites to paragraphs in the parties' statements of facts, or portions of such paragraphs, where not "specifically controverted by a correspondingly numbered paragraph in the opposing statement."

the intersection after 4:00 p.m. (See id. ¶¶ 21–23). Traffic surrounding the intersection was slow and heavy, and plaintiff believed the defendant officers were doing a poor job directing traffic. (See id. ¶¶ 25–28). Plaintiff therefore grew increasingly frustrated. (See id. ¶¶ 27, 34).

Plaintiff then "abruptly" stopped his car in the middle of West Granville street, blocking traffic from travelling East over the rail tracks, and approached defendant Gonzalez. (See id. ¶ 30). Plaintiff said "do you know how to do your f***ing job[,]" and yelled similar obscenities at Gonzalez at least once more.[2] (See id. ¶¶ 31, 33; Pl's Local Rule 56.1(a)(2) Opposing Statement of Material Facts in Opp'n Defs' Statement of Material Facts (DE 42) ("Pl's SMF") ¶¶ 31, 33).

During this interaction, a bystander began recording the confrontation between plaintiff and defendant Gonzalez. (See Video Recording (App. Defs' Statement of Material Facts (DE 34) ("Defs' App. SMF")) Ex. D).[3] In the video, plaintiff approaches Gonzalez, and the two men appear to speak, but the content of their discussion cannot be heard on the recording. (Video Recording at 00:01–00:15). Then, Gonzalez reaches out to grab plaintiff's arm. (See id. at 00:28). Plaintiff was facing Gonzalez when he did so. (See id.). Plaintiff pulls away from Gonzalez, and the two men struggle for a few seconds. (Id. at 00:28–00:30). During this time, Gonzalez's back is to the camera, so that his body blocks the recording's view of plaintiff, and the video thus does not reveal what actions, if any, plaintiff took towards Gonzalez. (See id.). But afterwards,

---

[2] In all appearances of the term quoted above in the text, the court has replaced the full term with its first letter followed by asterisks.

[3] Defendants filed the video recording manually, which the court relies upon to summarize here the events from this point forward. See Scott v. Harris, 550 U.S. 372, 378–79 (2007); e.g., Iko v. Shreve, 535 F.3d 225, 230 (4th Cir. 2008) ("we must only credit plaintiff's version of the facts to the extent it is not contradicted by the videotape"). Plaintiff produces no affidavits or other forms of evidence on the facts of this confrontation, but rather rests his statement of material facts on the recording. (See Pl's SMF ¶¶ 36–45). While plaintiff has filed two expert reports in opposition to defendants' motion, both reports only offer legal conclusions based on the video. Neither report creates an issue of fact on what the video depicts. See Scott, 550 U.S. at 378–79; (Pl's App. Local Rule 56.1(a)(2) Opposing Statements Material Fact Opp'n Defs' Statement Material Facts (DE 43) ("Pl's App. SMF") Ex. 1 (DE 43-1); id. Ex. 2 (DE 43-2)).

Gonzalez strikes plaintiff with closed fists several times as he and plaintiff continue to grapple together for several seconds, before defendant Hart is able to pull plaintiff away and place him in what the parties describe as an "arm bar." (See id. at 00:30–00:40; Defs' SMF ¶ 39; Pl's SMF ¶ 39).

Defendant Gonzalez then backs away from plaintiff and defendant Hart, as plaintiff raises his balled fists. (Video Recording at 00:42). Plaintiff takes a few steps towards Gonzalez, bringing Hart with him. (See id. at 00:43–00:50). Hart walks plaintiff, still in the "arm bar," towards the side of the road, and then abruptly stops. (See id. at 00:50–00:56). Gonzalez then places plaintiff in a headlock, strikes him with closed fist again, and helps Hart move plaintiff to a nearby parked car. (See id. at 00:57–1:05).[4] Plaintiff and the officers grapple at the parked car for several more seconds, before a third law enforcement officer approaches, with whose help the defendant officers force plaintiff to the ground to be handcuffed. (See id. at 1:05–1:53). The video recording then ends.

Plaintiff refused Emergency Medical Service ("EMS") treatment, and was transported to jail. (Defs' SMF ¶¶ 43, 46). Plaintiff was charged with (1) assault on a law enforcement officer; (2) resisting, delaying, and obstructing the duties of a law enforcement officer ("RDO"); (3) impeding traffic; (4) possession of controlled substances in a container other than the original prescription container. (Id. ¶ 46). A Harnett County magistrate judge found that probable cause existed to arrest plaintiff on all of these charges, and issued an arrest warrant. (Id.). Under a plea agreement, the district attorney dismissed all the charges except for impeding traffic, for which plaintiff pleaded "no contest" and received a 30-day prison sentence. (Id. ¶ 47).

---

[4] The defendant officers have testified via affidavit that they took these latter steps because plaintiff continued to resist and attempted to escape the "arm bar"; plaintiff does not directly dispute this assertion. (See Defs' App. SMF Ex. A (DE 34-1) ("Gonzalez Aff.") ¶¶ 6–8; id. Ex. B (DE 34-2) ("Hart Aff.") ¶¶ 10–11; Pl's SMF ¶¶ 39–41).

## COURT'S DISCUSSION

A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B. Analysis

    1. False Arrest and Malicious Prosecution – Common Law and § 1983

Defendants seek summary judgment against plaintiff's common law and § 1983 claims for false arrest/imprisonment and malicious prosecution, on several grounds. Defendants argue that both claims require a lack of probable cause to arrest or prosecute, but that probable cause existed to arrest plaintiff for at least one offence. Defendants further argue that plaintiff fails to establish a favorable termination of proceedings as required, and that these claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994). The court agrees with the probable cause argument in the first instance and with the favorable termination argument in the alternative, and therefore does not reach the Heck issue.

        a. Probable Cause

Claims for malicious prosecution, false imprisonment, and false arrest all require a lack of probable cause for an underlying arrest, under both the Fourth Amendment and North Carolina common law. See Durham v. Horner, 690 F.3d 183, 188 (4th Cir. 2012) (assuming that malicious

6

prosecution is cognizable under § 1983, and deciding that it requires lack of probable cause);[5] Brown v. Gilmore, 278 F.3d 362, 367–68 (4th Cir. 2002) (false arrest/imprisonment, Fourth Amendment); Turner v. Thomas, 369 N.C. 419, 425 (2016) (malicious prosecution, North Carolina common law); Adams v. City of Raleigh, 245 N.C. App. 330, 334–35 (2016) (false arrest/imprisonment, North Carolina common law).

The court turns to the charged RDO offense first. N.C. Gen. Stat. § 14-223 prohibits "willfully and unlawfully resist[ing], delay[ing] or obstruct[ing] a public officer in discharging or attempting to discharge a duty of his office." Id. Defendants argue that plaintiff's conduct in approaching and criticizing Gonzalez constituted RDO, and therefore created probable cause to arrest plaintiff on that charge.

RDO prohibits only willful resistance, and therefore does not reach mere verbal criticism of an officer without connected resistance, obstruction, or delay. See State v. Leigh, 278 N.C. 243, 251 (1971); State v. Singletary, 73 N.C. App. 612, 615 (1985). But refusing commands and verbally harassing an officer on duty therefore qualify if the defendant's conduct disrupted the officer's duties. See Leigh, 278 N.C. at 251; State v. Bell, 164 N.C. App. 83, 85–86 (2004); see, e.g., State v. Kaley, No. COA10-1124, 2011 WL 1238368, at *5 (N.C. Ct. App. Apr. 5, 2011); Craddock v. Beaufort Cnty. Sheriff Dep't, No. 4:09-cv-92-D, 2011 WL 4460309, at *8 (E.D.N.C. Sept. 26, 2011). An individual need not use physical force to commit RDO. See State v. Hardy, 298 N.C. 191, 197 (1979). Finally, the statute applies to any disruption to the officer's duties, not just to the officer's execution of an arrest. See id.; In re S.D.R., 191 N.C. App. 552, 555 (2008).

---

[5]   There is conflict in Fourth Circuit precedent on whether malicious prosecution is cognizable as an independent claim under the Fourth Amendment and § 1983. See Durham, 690 F.3d at 188 (discussing this conflict but assuming that such a claim exists independently for purposes of the court's analysis). The court takes the Horner court's approach, and assumes without deciding that such claim is cognizable in the manner plaintiff presents.

7

Here, the video recordings and undisputed facts show that plaintiff approached Gonzalez, directed strong profanity at him at least once, refused numerous commands to return to his own vehicle, and distracted and diverted Gonzalez from his traffic control duties. (See Video Recording at 00:01–00:30; Defs' App. SMF Ex. E ("Audio Recording") at 00:01-00:25; Gonzalez Aff. ¶¶ 4–5). These facts align with numerous North Carolina cases upholding convictions under the RDO statute. See, e.g., State v. Harper, 285 N.C. App. 507, 514 (2022) (refusing commands in way that obstructed investigation); State v. Cornell, 222 N.C. App. 184, 188 (2012) (refusing commands); Bell, 164 N.C. App. at 94–95 (refusing commands and disrupting arrest); see also Leigh, 278 N.C. at 251. These actions gave Gonzalez probable cause to arrest plaintiff for RDO.

Plaintiff argues that the officers lacked probable cause to arrest him for RDO, but the cases he cites do not address the distinction addressed above: mere criticism or refusing commands are not RDO alone, but do constitute that crime when accompanied by disruption to the officer's duties. See Leigh, 278 N.C. at 251–52; Bell, 164 N.C. App. at 94–95. Indeed, Bell distinguishes plaintiff's first cited case, State v. Allen, 14 N.C. App. 485 (1972), on exactly this ground. See Bell, 164 N.C. App. at 94–95. And plaintiff's other case does not resemble the facts here. In Burton v. City of Durham, 118 N.C. App. 676 (1995), the arrestee went beyond mere criticism by repeatedly refusing commands and interfering with the officer's attempts to request needed information via radio, and the court concluded that the arrest did not result from mere verbal protests. See id. at 678–79, 681–82. Finally, plaintiff cites Andersen v. Haynes, No. 1:07CV2, 2009 WL 2591277, at *13–14 (N.D.W. Va. Aug. 21, 2009), for similar points. The court first observes that this decision involved application of West Virginia state law, and so holds little persuasive force in this context. In addition, the officer arrested the citizen for a separate charge for which the officer did not have probable cause, and the RDO charge flowed from the arrestee's

8

resisting arrest on that other charge; the court held that the citizen had not committed RDO because state law conferred a right to physically resist an unlawful arrest. See id. at *13–14. In contrast, here plaintiff's pre-arrest conduct constituted RDO, and Gonzalez lawfully arrested him on that charge.

In turn, this probable cause defeats plaintiff's malicious prosecution and false arrest claims, because an arrest is lawful if made with probable cause for any offense, not just those cited by the officers or later charged. See Humbert v. Mayor & City Council of Baltimore City, 866 F.3d 546, 555–56 (4th Cir. 2017); Shreve v. Limpert, No. 5:19-cv-178-FL, 2019 WL 6116038, at *5 (E.D.N.C. Nov. 15, 2019).

Because probable cause existed to arrest plaintiff for RDO, plaintiff's claims for malicious prosecution and false arrest fail as a matter of law. Because the court concludes that probable cause existed to arrest plaintiff for RDO, the court does not reach the other three charges.

    b.  Favorable Termination

Additionally, and in part in the alternative, the court addresses defendants' argument on favorable termination of criminal proceedings.

The favorable termination of proceedings is an element of malicious prosecution under the Fourth Amendment and § 1983, and under North Carolina common law. See Durham, 690 F.3d at 188 (assuming that malicious prosecution is cognizable under § 1983, and that such claim requires favorable termination); Turner, 369 N.C. at 425 (North Carolina common law). A "no contest" plea is not a favorable termination of proceedings under North Carolina law. See In re A.S.T., 375 N.C. 547, 553 (2020). Nor is the dismissal of charges pursuant to a plea bargain. See Tucker v. Duncan, 499 F.2d 963, 965 (4th Cir. 1974) (quoting Welch v. Cheek, 125 N.C. 353 (1899)).

9

Plaintiff pleaded "no contest" to impeding traffic, and the other charges were dismissed under a plea bargain. (Defs' SMF ¶ 47; Pl's SMF ¶ 47). No charges against plaintiff terminated favorably to him. The court therefore concludes that this undisputed fact serves as an alternative bar against plaintiff's malicious prosecution claim.

2. Excessive Force

Defendants argue that plaintiff's excessive force claim must fail because the officers' use of force against plaintiff was objectively reasonable. The court agrees.

"[A]ll claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Graham v. Connor, 490 U.S. 386, 395 (1989). "[P]olice officers are constitutionally permitted to use only that force which is reasonable under the circumstances." Hupp v. Cook, 931 F.3d 307, 321 (4th Cir. 2019). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396; see also Kingsley v. Hendrickson, 576 U.S. 389, 399, (2015) ("[A] court must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer."); Saucier v. Katz, 533 U.S. 194, 207 (2001) ("Excessive force claims . . . are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred"), abrogated on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009).

"The court's focus should be on the circumstances at the moment force was used and on the fact that officers on the beat are not often afforded the luxury of armchair reflection." Elliott v. Leavitt, 99 F.3d 640, 642 (4th Cir. 1996). Under Graham, courts consider the following factors: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the

safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396 (hereinafter, the "Graham factors"). In addition, the court may consider "[t]he relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force." Kingsley, 576 U.S. at 397. "Ultimately, [the court] must decide whether the totality of the circumstances justifie[d] a particular sort of . . . seizure." Hupp, 931 F.3d at 322.

Defendants assert a qualified immunity defense. (See Defs' Mem. Law Supp. Mot. Summ. J. (DE 35) ("Defs' Br. Supp.") 25–26). The court therefore conducts the Graham analysis under the first prong of qualified immunity: whether defendants' conduct violated a constitutional right. E.g., Callahan, 555 U.S. 223, 232 (2009); Owens ex rel. Owens v. Lott, 372 F.3d 267, 273 (4th Cir. 2004).

First, the court addresses severity of the crimes at issue. Non-violent misdemeanors such as impeding traffic are minor crimes for the purposes of this factor. See Yates v. Terry, 817 F.3d 877, 885 (4th Cir. 2016). The court will assume without deciding that RDO should also be considered minor here, because plaintiff did not act violently before the confrontation turned physical when Gonzalez attempted to arrest him. However, defendants also argue that plaintiff committed the offence of assault against a law enforcement officer, which is a severe offence under the Graham factors. See Hicks v. City of Lynchburg, --- F. Supp. 3d ---, 2023 WL 6456488, at *8 (E.D. Va. 2023); Thompson v. Badgujar, No. 20-cv-1272, 2021 WL 3472130, at *7 (D. Md. Aug. 6, 2021); N.C. Gen. Stat. § 14-34.7 (establishing assault on a law enforcement officer as a felony).

Plaintiff does not directly dispute that he struck Gonzalez. (See Pl's SMF ¶¶ 38–39). And defendants have produced an affidavit from a witness who testifies that plaintiff struck Gonzalez first, (see Defs' App. SMF Ex. G (DE 34-5) ("Williams Aff.") 2), which the video evidence does

11

Case 5:22-cv-00114-FL   Document 45   Filed 12/27/23   Page 11 of 18

not contradict because plaintiff and his actions, if any, are obscured by Gonzalez's body for the critical first few seconds of the altercation, before Gonzalez struck plaintiff the first time. (See Video Recording at 00:28–00:30). This first factor therefore weighs against a conclusion of excessive force, because the undisputed facts show that plaintiff committed a severe crime, assault on a law enforcement officer, against Gonzalez.

Second, plaintiff posed a risk to the officers and others because he physically assaulted Gonzalez, for the same reasons discussed with reference to the first Graham factor above.

Third, plaintiff attempted to actively resist arrest. In addition to the struggle between plaintiff and Gonzalez, defendants produce affidavit testimony from the officers that once Hart placed plaintiff in the "arm bar," plaintiff continued to struggle and physically resist. (See Gonzalez Aff. ¶¶ 6–8; Hart Aff. ¶ 10). Plaintiff does not directly dispute that he continued to resist, and the video footage is again ambiguous. (See Pl's SMF ¶¶ 39–40; Video Recording at 00:42–1:05). Physically resisting arrest supports the application of force, e.g., Wilson v. Flynn, 429 F.3d 465, 468 (4th Cir. 2005); Gilmore, 278 F.3d at 369–70, and so this factor cuts in defendants' favor.

Further, plaintiff sustained no significant injuries. He admits that he did not seek treatment for any injuries resulting from the incident, stated at the scene that he was "OK," and refused any medical attention from emergency medical service providers. (See Defs' SMF ¶¶ 42–43; Pl's SMF ¶¶ 42–43; Defs' App. SMF Ex. F (DE 34-4) ("Allen Dep.") 83:7–20). This factor also favors defendants. See Kingsley, 576 U.S. at 397.

Finally, the court addresses the types of force used. At the outset, the court notes that it conducts this evaluation with the undisputed facts on the first and third Graham factors in mind:

that plaintiff struck Gonzalez first, and physically resisted arrest until ultimately subdued and handcuffed.

Plaintiff points to four applications of force to support his claim: Gonzalez's use of closed fist punches on plaintiff, Hart's placement of plaintiff into an "arm bar," Gonzalez's use of a headlock, and the officers' movement of plaintiff to the side of the road to be handcuffed. (See Compl. ¶¶ 83–84). The court examines each in turn.

First, Gonzalez's use of punches was reasonable under these circumstances. The Fourth Circuit has not squarely addressed the question of whether the use of closed fist punches against an actively resisting suspect in these circumstances constitutes excessive force.[6] This absence is itself relevant to the qualified immunity analysis under the second prong, which requires clear establishment of an allegedly violated right with a high level of specificity. E.g., Kisela v. Hughes, 138 S. Ct. 1148, 1152–53 (2018).

But even examining just the first qualified immunity prong, the Fourth Circuit has concluded that punches were excessive when applied to suspects who were already detained, secured, and no longer resisting. See Thomas v. Holly, 533 F. App'x 208, 218 (4th Cir. 2013); Jones v. Buchanan, 325 F.3d 520, 523–25, 528–30 (4th Cir. 2003). However, these cases presented circumstances far from those in which Gonzalez acted here. Plaintiff's arguments assume that the arrest was unlawful, rendering any force unreasonable and giving plaintiff a right to resist. (See Pl's Resp. Opp'n Defs' Mots. Summ. J. (DE 41) ("Pl's Br. Opp'n") 10–13). But the court has concluded above that Gonzalez had probable cause to arrest plaintiff for RDO, which renders Gonzalez's attempt to do so lawful. See Virginia v. Moore, 553 U.S. 164, 171 (2008). Therefore,

---

[6] The Fourth Circuit has ruled that punches did not constitute excessive force in other circumstances. Flynn, 429 F.3d at 467–69. However, Flynn involved factors absent here, such as the suspect's assault of a third party, heavy intoxication, and possession of a gun. See id. at 469. This case therefore favors the conclusion that the punches here were reasonable, but is not dispositive alone.

these arguments and the cases dealing with use of punches against non-resisting suspects are not dispositive on the qualified immunity issue.

Several other federal courts of appeals have concluded that the use of closed fist punches against a resisting suspect does not constitute excessive force. See, e.g., Brax v. City of Grand Rapids, Mich., 742 F. App'x 952, 956–57 (6th Cir. 2018); Conklin v. Hale, 680 F. App'x 120, 123 (3d Cir. 2017); Mobley v. Palm beach Cnty. Sheriff Dep't, 783 F.3d 1347, 1351, 1355 (11th Cir. 2015); Husbands ex rel. Forde v. City of New York, 335 F. App'x 124, 128–29 (2d Cir. 2009); Winters v. Adams, 254 F.3d 758, 764–66 (8th Cir. 2001).

Numerous district courts, including those in the Fourth Circuit, have reached the same conclusion. See Moore v. Peitzmeier, No. TDC-18-2151, 2020 WL 94467, at *7 (D. Md. Jan. 7, 2020); Mills v. Rich, No. 7:13-cv-138-BO, 2015 WL 5139198, at *5 (E.D.N.C. Sept. 1, 2015); see also Whyde v. Sigsworth, No. 3:19 CV 683, 2022 WL 974204, at *18 (N.D. Ohio Mar. 30, 2022); Salway v. Norris, No. 2:20-CV-115, 2021 WL 2953668, at *6 (D. Wyo. July 14, 2021); Recca v. Pignotti, 456 F. Supp. 3d 1154, 1166 (D. Neb. 2020); Chambers v. Watson, No. 6:18-cv-06091, 2020 WL 1060326, at *12 (W.D. Ark. Feb. 3, 2020); Pinder v. Skero, 375 F. Supp. 3d 725, 732–33, 743–44 (S.D. Tex. 2019); Burgess v. City of Sioux Falls, CIV 17-4027, 2018 WL 2305668, at *9 (D.S.D. May 21, 2018).

No Fourth Circuit authority holds that the use of punches on a physically resisting suspect is objectively unreasonable. And a wealth of other authority points in the opposite direction. The court therefore concludes that such force was not objectively unreasonable and did not violate the Fourth Amendment in the circumstances of this case.

Second, plaintiff argues that Hart's use of the "arm bar" technique on plaintiff was unreasonable. But the Fourth Circuit has held that "standard procedure[s] such as handcuffing

would rarely constitute excessive force" where the underlying arrest was lawful. Gilmore, 278 F.3d at 369. Subsequent cases, and other district courts, have held that the "arm bar" technique is such a standard procedure. E.g., Redding v. Boulware, 501 F. App'x 238, 239–40 (4th Cir. 2012); Middleton v. Town of Moncks Corner, No. 2:21-cv-010171, 2022 WL 19402454, at *11 (D.S.C. Nov. 7, 2022). The court therefore concludes that use of the "arm bar" technique was not objectively unreasonable under the circumstances presented here.

This analysis leads to the same conclusion regarding the officers' movement of plaintiff towards and into the nearby parked car, because plaintiff was resisting and the officers used little force to do so. See Brissett v. Paul, No. 97-6898, 1998 WL 195945, at *4 (4th Cir. Apr. 6, 1998) (concluding that pushing suspect forcefully into vehicle was not excessive force); Robinson v. Best, --- F. Supp. 3d ---, 2023 WL 5616172, at *8–9 (E.D.N.C. 2023) (concluding that pushing suspect into car hard enough to break car's back window was not excessive force); cf. Valladares v. Cordero, 552 F.3d 384, 390–91 (4th Cir. 2009) (concluding that slamming suspect into car hard enough to break suspect's jaw was excessive force because suspect was not resisting).

Finally, the court turns to Gonzalez's placement of plaintiff in a headlock. As with the use of punches, the Fourth Circuit has not held that the use of a headlock on a resisting suspect is excessive force, and this absence is itself relevant to the qualified immunity inquiry. In contrast, the Fourth Circuit has ruled that a headlock constituted excessive force only in far different circumstances from those here. See Young v. Prince George's Cnty, Md., 355 F.3d 751, 757 (4th Cir. 2004) (use of headlock on non-resisting, handcuffed suspect excessive); see also Harrison v. Prince William Cnty. Police Dep't, 640 F. Supp. 2d 688, 702–04 (E.D. Va. 2009) (concluding that placing non-resisting suspect in headlock, slamming him to the ground, and grinding his face into the pavement was not reasonable force).

15

Case 5:22-cv-00114-FL   Document 45   Filed 12/27/23   Page 15 of 18

In addition, numerous other courts have held that placing a resisting suspect into a headlock is not objectively unreasonable. E.g., Hale, 680 F. App'x at 123; Hill v. Carroll Cnty., Miss., 587 F.3d 230, 232, 237 (5th Cir. 2009); Rucker v. Hampton, 49 F. App'x 806, 808, 811 (10th Cir. 2002); Manigault v. Housey, No. 0:15-4647, 2017 WL 1100867, at *2–3 (D.S.C. Mar. 24, 2017); see also Walker v. Lauderdale Cnty., Tenn., No. 2:16-cv-2362, 2019 WL 1179423, at *9 (W.D. Tenn. Mar. 13, 2019); Abdulkhalik v. City of San Diego, No. 08CV1515, 2009 WL 4282004, at *6–7 (S.D. Cal. Nov. 25, 2009).

No Fourth Circuit authority holds the use of a headlock on a resisting suspect unreasonable, and numerous cases from other courts hold to the contrary. The court therefore concludes that the use of the headlock here was not objectively unreasonable.

In sum, all the officers' uses of force were objectively reasonable under the circumstances of this case. The court therefore concludes that the officers are entitled to qualified immunity and to summary judgment against plaintiff's excessive force claim.

3.  Other State Law Claims

The conclusion that a law enforcement officer's use of force was reasonable for the purposes of qualified immunity under § 1983 is fatal to tort claims under North Carolina law alleged from the same conduct. See Sigman v. Town of Chapel Hill, 161 F.3d 782, 788–89 (4th Cir. 1998); Wilcoxson v. Painter, No. 5:13-CV-732-FL, 2016 WL 866327, at *10 (E.D.N.C. Mar. 3, 2016) (citing Glenn-Robinson v. Acker, 140 N.C. App. 606, 625 (2000)).

Similarly, public official immunity under North Carolina law is functionally identical to qualified immunity under federal law. See Bailey v. Kennedy, 349 F.3d 731, 742 (4th Cir. 2003); Pritchard v. Mobley, 595 F. Supp. 3d 438, 452 (E.D.N.C. 2022). Because the court has concluded

that qualified immunity bars plaintiff's § 1983 claim for excessive force, public official immunity bars plaintiff's parallel state law claim for the same reasons.

Because the court has concluded that the officers' use of force was reasonable under the qualified immunity analysis, plaintiff's state law claims against the officers for assault, battery, excessive force, and negligence cannot survive. The court grants defendants' motion on these claims.

4. Negligence Against City of Dunn

Defendants produce evidence supporting their position on plaintiff's negligent hiring, training, and supervision claim. (See Defs' SMF ¶¶ 9–13). Plaintiff concedes defendants' asserted facts as undisputed, and produces no argument or evidence of his own to support this claim. (See Pl's SMF ¶¶ 9–13).

The party opposing a motion for summary judgment bears the burden of showing the existence of genuine issues of material fact. See Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008). Failing to respond to evidence, and to arguments in the moving party's briefing, constitutes a concession of an issue under this rule. See Matsushita Elec. Indus. Co. Ltd., 475 U.S. at 586–87; see also, e.g., Oliver v. Baity, 208 F. Supp. 3d 681, 691–92 (M.D.N.C. 2016) (applying this principle to dismiss unsupported municipal liability claims).

Because plaintiff does not dispute defendants' evidence, and does not offer any argument in his briefing on this count, the court grants defendants' motion on this claim.

## CONCLUSION

For the forgoing reasons, defendants' motion for summary judgment (DE 32) is GRANTED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 27th day of December, 2023.

_____
LOUISE W. FLANAGAN
United States District Judge

18

Case 5:22-cv-00114-FL   Document 45   Filed 12/27/23   Page 18 of 18